IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT F. CHERRY, JR., et al. *

Plaintiffs *

vs. * CIVIL ACTION NO. MJG-10-1447

MAYOR AND CITY COUNCIL OF *
BALTIMORE CITY, et al.
*
Defendants

* * * * * * * * *

MEMORANDUM AND ORDER RE: SEVERABILITY

The Court has before it the Defendant Mayor & City Council of Baltimore's Motion to Sever (Memorandum Regarding Severability) [Document 176], and the materials submitted relating thereto. The Court has held a hearing and has had the benefit of the arguments of counsel.

## I. INTRODUCTION

In 1962, Baltimore City (the "City") enacted the Fire and Police Employees' Retirement System of the City of Baltimore (the "Plan"), which provides defined benefits to its members and beneficiaries. In 2010, the City enacted Ordinance 10-306 ("the Ordinance") which modified the benefit structure of the Plan in several respects, including the elimination of the Variable Benefit feature and substitution of a Tiered COLA system. Plaintiffs filed the First Amended and Restated Class Action

Complaint for Declaratory, Injunctive, and Monetary Relief [Document 5] (the "Amended Complaint") against the City and others challenging, inter alia, the constitutionality of the Ordinance under the Contract Clause of the Federal Constitution (the "Contract Clause Claim"). As agreed with counsel, the Court has first adjudicated the Contract Clause Claim.

In the First Trial Decision Re: Constitutional Claim [Document 68], the Court found that Plaintiffs' Contract Clause Claim is based upon the elimination of the Variable Benefit feature by the Ordinance. In the Second Trial Decision Re: Substantial Impairment [Document 115], the Court found elimination of the Variable Benefit feature substantially impaired the contract rights of certain Plan members and beneficiaries.[1] In the Third Trial Decision Re: Reasonable and Necessary [Document 167], the Court found that the elimination of the Variable Benefit feature and substitution of the Tiered COLA system by the Ordinance was not reasonable and necessary to serve an important public purpose thereby violating the Contract Clause of the Federal Constitution. Accordingly, the Court has

---

[1] Specifically, the Court found that the Entitled Group and the Eligible Group (as to benefits based upon service prior to the effective date of the Ordinance) as defined therein, sustained a substantial retroactive impairment within the meaning of the Contract Clause of their right to the Variable Benefit feature. In the Class Certification Order [Document 116], the Court certified the Federal Claims Class consisting of the Entitled Group (excluding two conflict sub-groups).

found unconstitutional the portion of the Ordinance that eliminated the Variable Benefit feature.

The Court must now make a severability determination. In some cases, the question has been stated as whether the invalidity of certain provisions of an ordinance so affect the legislation that "it must fall as a whole, or whether its otherwise valid provisions may be separately enforced." O.C. Taxpayers For Equal Rights, Inc. v. Mayor & City Council of Ocean City, 375 A.2d 541, 548-49 (Md. 1977). However, since (as discussed herein) the parties agree that at least one otherwise valid provision of the Ordinance may be separately enforced, the Ordinance will not "fall as a whole." Rather, the Court must determine which provisions of the Ordinance must "fall" by virtue of the Court's determination invalidating the elimination of the Variable Benefit feature and which provisions may stand.

## II. SEVERABILITY STANDARD

Upon a finding that a portion of a unified legislative scheme is invalid or unconstitutional, it becomes the duty of the court to subject "the entire scheme to scrutiny" and make a severability determination. O.C. Taxpayers, 375 A.2d at 548-49. State law governs the question of the severability of a state statute's provisions. Sons of Confederate Veterans, Inc. v. Comm'n of Virginia Dep't of Motor Vehicles, 288 F.3d 610, 627

(4th Cir. 2002).

Under Maryland law, to determine whether or not the valid portions of a legislative scheme are severable from the invalid, courts look to legislative intent in the sense of evaluating whether a legislative body, at the time of enactment, would "have intended that the valid portions be separately effective if it had known that the invalid portions were incapable of being carried out." O.C. Taxpayers, 375 A.2d at 549 (finding resolution limiting voting right to domiciliaries severable from invalid grandfather clause where dominant purpose of legislation to limit voting to domiciliaries could be given effect without the grandfather clause). Importantly, even in absence of an express severability clause, there is a strong presumption that the legislative body "generally intends its enactments to be severed if possible." Id. at 550; Jackson v. Dackman Co., 30 A.3d 854, 869-70 (Md. 2011). The presence of a severability clause in an enactment reinforces the presumption in favor of severability. O.C. Taxpayers, 375 A.2d at 550; Bd. of Supervisors of Elections of Anne Arundel Cnty. v. Smallwood, 608 A.2d 1222, 1234 (Md. 1992).

The principal test for assessing legislative intent is whether "the dominant purpose of an enactment may largely be carried out notwithstanding the enactment's partial invalidity." Jackson, 30 A.3d at 869-70 (quoting Smallwood, 608 A.2d at 1235)

(finding unconstitutional provisions in the Reduction of Lead Risk in Housing Act granting immunity to property owners severable where the act contained a severability clause and dominant purpose of act, to reduce the incidence of childhood lead poisoning while maintaining the stock of available affordable rental housing, could be given effect without the invalid provisions). However, an enactment is not severable if the invalidated provisions so permeate the dominant aim of the whole legislative scheme so as to render it impossible to believe that if the enactment had been presented to the legislature with the invalid features eliminated, the legislature would have still passed it. See City of Baltimore v. A.S. Abell Co., 145 A.2d 111, 120 (Md. 1958) (finding tax regulation declared invalid as to certain groups not severable from parts applicable to other groups where court concluded it was "inconceivable" that the city council would have imposed the tax regulation on the other groups alone because projections indicated tax revenues from the other groups accounted for only 4% of the budgetary estimate).

## III. DISCUSSION

### A. Judicial Estoppel

Plaintiffs contend the City should be judicially estopped from asserting that the Ordinance is severable because "the City

has consistently represented to the Court that the Ordinance is an interconnected statutory scheme that is not capable of being severed." Pls.' Opp'n [Document 180], at 16.

"Judicial estoppel is a principle developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court." Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007). In order for judicial estoppel to be applied, three elements must be satisfied:

> 1. The party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation;
>
> 2. The prior inconsistent position must have been accepted by the court; and
>
> 3. The party against whom judicial estoppel is to be applied must have intentionally misled the court to gain an unfair advantage.

Id. Additionally, the position at issue must be one of fact as opposed to one of law or legal theory. Id.

The Plaintiffs have not demonstrated the applicability of judicial estoppel to the instant matter.

In prior stages of this litigation, the City advocated that the Ordinance must be considered as a whole for purposes of determining whether any substantial impairment of Plaintiffs' vested contractual rights was reasonable and necessary to serve an important public purpose within the meaning of the Contract

Clause. This is not inconsistent with the City's present position that even though all provisions of the Ordinance should be considered as a single unit when considering the reasonable and necessary issue, some provisions can be severed and, thus, not deemed invalid based on the Court's determination that the elimination of the Variable Benefit violated the Contract Clause.

In any event, even if the City has taken inconsistent positions regarding the unitary treatment of the Ordinance, the doctrine of judicial estoppel would not relieve the Court of its duty to engage in a severability analysis to determine the enforceability of the otherwise valid provisions of the Ordinance. "[I]t is a settled policy that, upon finding that a statute is invalid in some respect, it 'becomes the duty of the court whenever possible to separate the valid from the invalid provisions.'" O.C. Taxpayers, 375 A.2d at 550 (Md. 1977) (quoting Davidson v. Miller, 344 A.2d 422, 439 (Md. 1975)).

B. Severability

The Ordinance completely changed the manner by which post-retirement benefit enhancements were to be provided to beneficiaries by eliminating the Variable Benefit feature[2] and

[2] For a detailed discussion of the Variable Benefit feature, see the Second Trial Decision [Document 115], at 4-10.

substituting a Tiered COLA system. Specifically, Section 36A(b) amended Article 22 to make the Variable Benefit payable only in fiscal years that ended on or before June 30, 2009, and Section 36A(h), substituted the Tiered COLA for the Variable Benefit feature in fiscal years beginning on or after July 1, 2009 (the "Variable Benefit Elimination Provisions"). The Court has found the Variable Benefit Elimination Provisions invalid.

In addition to the Variable Benefit Elimination Provisions, the Ordinance includes three categories of amendments. These are:

1. The Variable Benefit Related Provisions,
2. The Board Provision, and
3. The Cost-Savings Provisions.

The parties agree that, in view of the Court's determination regarding the elimination of the Variable Benefit feature[3], the Variable Benefit Related Provisions cannot be separately enforced. The parties also agree that the Board Provision is separable from the Variable Benefit Elimination Provisions. The parties disagree as to the Cost-Savings Provisions.

The Court shall, herein, identify the provisions as to which there is agreement and resolve the dispute regarding the

---

[3] With which, of course, the City disagrees and has preserved its appellate rights.

Cost-Savings Provisions.

1. The "Variable Benefit Related Provisions"

The "Variable Benefit Related Provisions" are:

1. Section 36A(i), which authorizes the transfer of assets from the Paid-Up Benefit Fund and the Contingency Reserve Fund to the "General Asset Account"[4];

2. Section 36A(j), under which the City guarantees post-retirement increases;

3. Section 34(s-1), which establishes the "minimum benefit" of $16,000 for certain spousal beneficiaries; and

4. Section 30(9)(ii), which replaces the former two-tiered interest rate assumption[5] with a single-rate assumption.

All parties agree that, in view of the Court's determination invalidating the elimination of the Variable Benefit feature, these provisions cannot be separately enforced and thus must be deemed invalid.

---

4 As discussed in the Second Trial Decision [Document 115], prior to the Ordinance, the Plan utilized two funds to hold Variable Benefit assets (the Paid-Up Benefit Fund and the Contingency Reserve Fund) and these funds were invested conservatively and not in the same manner as the Plan assets funding the basic benefit.

5 Prior to the Ordinance, the Plan utilized an 8.25% interest rate assumption on pre-retirement assets and a 6.8% interest rate assumption on post-retirement assets. This dichotomy of interest rate assumptions stemmed in part from the nature of the Variable Benefit feature.

2. The "Board Provision"

The Board Provision amended Section 33 of Article 22 by modifying the composition of the Board of Trustees and changing requirements that certain Board members must meet. All parties agree that this provision may be separately enforced notwithstanding the Court's determination invalidating the elimination of the Variable Benefit feature.

3. The "Cost-Savings Provisions"

The Ordinance includes amendments that made prospective cost-savings[6] and fiscal related changes to aspects of the Plan in addition to those changes related to the elimination of the Variable Benefit feature, including modifications to the following provisions:

1. Section 30(11)-which changes the definition of "average final compensation" used to calculate the basic benefit except to members with at least 15 years of service or who meet the requirements for normal service retirement as of June 30,2010;

2. Section 32(f)-which changes the ability to receive credit for military service toward the amount of service necessary to be eligible to receive benefits;

3. Section 34(a-1)-which increases the age and service requirements that members must meet to receive normal service benefits except as to members who meet current eligibility requirements as of June 30, 2010, or members with at least 15 years of service;

[6] Cost-savings to the City.

4. Section 34(a-2)-which increases the age and service requirements that members must meet to receive early service retirement benefits except as to members who meet current eligibility requirements as of June 30, 2010, or members with at least 15 years of service;

5. Section 36(h)(5)-which increases the required employee contribution to the Plan; and

6. Section 36C(c)-which increases the service requirements for DROP 2 eligibility for members with few than 15 years of service.

The parties disagree as to whether the Cost-Savings Provisions should be deemed invalid in light of the Court's determination invalidating the elimination of the Variable Benefit Feature.

a. Severability Clause

Section 5 of the Ordinance contains an express severability clause that provides:

> AND BE IT FURTHER ORDIANED, That if any one or more of the provisions of this Ordinance shall be held contrary to law or shall for any reason whatsoever be held invalid, those provisions shall be deemed severable from the remainder of this Ordinance and shall in no way affect the validity or enforceability of the other provisions of this Ordinance.

Although not conclusive as to the issue of severability, this express severability clause reinforces the strong presumption that the City Council would have intended to enact

the Cost-Savings Provisions notwithstanding the invalidity of the Variable Benefit Elimination Provisions. See O.C. Taxpayers, 375 A.2d at 550; Smallwood, 608 A.2d at 1234.

b. Legislative Intent

In addition to the existence of an express severability clause, the principal test under Maryland law as to severability is whether "the dominant purpose of an enactment may largely be carried out notwithstanding the enactment's partial invalidity." Jackson v. Dackman Co., 30 A.3d 854, 869-70 (Md. 2011) (quoting Smallwood, 608 A.2d at 1235). The City asserts the Cost-Savings Provisions are severable because the dominant purpose in enacting the Ordinance was overall Plan reform to enhance the Plan's affordability and sustainability, which can be carried out absent the Variable Benefit Elimination and Related Provisions. Plaintiffs maintain that, except for the Board Provision, the Ordinance is not severable because the dominant purpose of the Ordinance was strictly "to remove a $65[7] million pension debt from the City's Fiscal Year 2011 budget through the elimination of the Variable Benefit", which cannot be achieved

[7] As pointed out by Plaintiffs, the estimated additional contribution needed to be made by the City to the Plan for Fiscal Year 2011 based upon an adoption of an actuary recommended 5% (as opposed to 6.8%) post-retirement investment return assumption, is identified as $64 million or $65 million in the various documents.

without the Variable Benefit Elimination Provisions. Pls.' Opp'n [Document 180] at 6.

The Legislative Findings contained in the Ordinance detail the City's ever increasing required annual contribution to the Plan, the adverse effect of the Variable Benefit feature on the sustainability of the Plan (including an estimated additional $64 million on top of the budgeted $101 million required annual contribution of the City needed to maintain the Variable Benefit feature), budget issues facing the City, and an actuarial analysis of the aforementioned issues. In the final Legislative Finding, the City Council concludes that:

> [I]t is necessary and reasonable to implement the recommendations of the independent actuary and financial consultant by modifying the current [Plan] **benefit structure** in order to restore the actuarial soundness of [the Plan] in a manner that minimizes diminution of benefits to [Plan] members.

(emphasis added). Additionally, the first page of the Ordinance lists a series of "purposes" for the amendment to Article 22, which include all of the reform measures contained in the Ordinance.

The legislative text strongly suggests that the dominant or primary purpose of the Ordinance was to reform the "benefit structure" of the Plan in order to restore actuarial soundness

without substantially diminishing Plan benefits. See Jackson, 30 A.3d at 869 (relying on stated purpose in legislative scheme at issue to ascertain dominant purpose of enactment). As also indicated by the legislative text, a significant aspect of the "benefit structure" reform implemented by the Ordinance, was the overhaul of the Plan's post-retirement benefit enhancement system, i.e., elimination of the Variable Benefit feature and substitution of the Tiered COLA system. As explained in the legislative findings, as well as, inter alia, the June 8, 2010 Memo from Edward J. Gallagher to the Department of Finance (part of the Legislative File), reform of the post-retirement benefit enhancement system was perceived as necessary in order to avoid an estimated $64 million addition to the City's required annual contribution for Fiscal Year 2011. As with the Cost-Savings Provisions, the Variable Benefit Elimination Provisions, according to the Legislative File and legislative text, served the broader goal of restoring actuarial soundness by reforming the Plan's "benefit structure."

The Cost-Savings Provisions concern prospective modifications to aspects of the benefit structure that affect calculation of a member's primary benefit upon retirement, the requirements necessary to retire and be entitled to pension benefits, and the amount of employee contribution to the Plan. These provisions concern only pre-retirement reform and have no

impact on, or connection with, the means by which the primary benefit is adjusted upward post-retirement. See generally City of Baltimore v. Stuyvesant Ins. Co., 174 A.2d 153, 158-59 (Md. 1961) ("It is the duty of a court to separate the valid from the invalid provisions of an ordinance, so long as the valid portion is independent and severable from that which is void."). Accordingly, the City Council's dominant purpose of reforming the "benefit structure" strongly suggests that the City Council intended the Cost-Savings Provisions to take effect even if the Variable Benefit Elimination Provisions were held invalid. See O.C. Taxpayers, 375 A.2d at 550.

In light of the strong presumption in favor of severability, the express severability clause contained in the Ordinance, and the strong indication from the legislative text that the dominant purpose of the City Council in enacting the Ordinance was to reform the Plan's "benefit structure" for purposes of restoring actuarial soundness without significantly diminishing benefits, the Court finds the City Council would have intended that the Cost-Savings Provisions be separately effective if it had known the Variable Benefit Elimination Provisions were incapable of being carried out.[8]

---

[8] The Court does not find the present situation significantly analogous to City of Baltimore v. A.S. Abell Co., 145 A.2d 111, 120 (Md. 1958) as posited by Plaintiffs. At issue here is a legislative scheme that amended several different and

Accordingly, the Court shall not hold the Cost-Savings Provisions invalid.

## IV. CONCLUSION

For the foregoing reasons:

1. Defendant Mayor & City Council of Baltimore's Motion to Sever (Memorandum Regarding Severability) [Document 176] is GRANTED.

2. Based on the Court's determination that the City's elimination of the Variable Benefit feature violated the Federal Contract Clause, the Court holds invalid and not enforceable the amendments made to Sections 36A(b), 36A(h), 36A(i), 36A(j), 34(s-1), and 30(9)(ii) by Ordinance 10-306, and no other provisions of the said Ordinance.

SO ORDERED, on Friday, November 30, 2012

/s/
Marvin J. Garbis
United States District Judge

---

independent aspects of a pension benefit plan of which one aspect was found unconstitutional. In Abell, the Maryland Court of Appeals addressed two discrete tax regulations, each of which imposed an advertising related tax on different specified groups. 145 A.2d at 112-13. The proposition that a fiscal related legislative scheme must be enforced as a whole because it served a particular budgetary purpose is much more conducive to a legislative scheme consisting of two specific tax regulations as opposed to a comprehensive amendment to a pension plan system.